CARROLL B. BLICK *vs.* THE MERCANTILE TRUST AND DEPOSIT COMPANY ET AL.

*Attachments—Claim for Unliquidated Damages in Action Ex Contractu.*

When the special requirements of the statute relating to attachments for unliquidated damages have not been complied with, no attachment can be issued against a non-resident debtor, unless the claim on which it is founded be for an ascertained amount, such as can be properly verified by affidavit, and the cause of action filed with the declaration must either show on its face the amount of the defendant's liability or itself furnish the standard for ascertaining such liability.

The affidavit and the declaration in an attachment issued to affect the funds of a non-resident stated the cause of action and the account to be for "services rendered in making investments, collecting income, adjusting settlements, releasing mortgages, and acting generally as defendant's agent, and superintending his financial affairs in the United States during the year 1900 to 1909, inclusive, at $1,500. a year, $15,-000." *Held,* that since this claim is for the value of services to be determined upon trial, and not for a sum agreed to be paid, or for a sum which may be ascertained by com-

putation or calculation from the contract, it is a claim for unliquidated damages, and the attachment issued thereon should be quashed.

*Decided June 22nd, 1910.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and URNER, JJ.

*Joseph N. Ulman* and *Clarence A. Tucker* (with whom were *S. J. Harman* and *Chas. H. Knapp* on the brief), for the appellant.

*John Hinkley* and *Louis J. Burger,* for J. M. Cockins, appellee.

PEARCE, J., delivered the opinion of the Court.

On September 23rd, 1909, the appellant, Carroll B. Blick, issued an attachment out of the Baltimore City Court against James M. Cockins, a non-resident of the State of Maryland, to recover the sum of $15,000 claimed to be due him for services rendered by him to said Cockins. This writ was laid in the hands of The Mercantile Trust and Deposit Company of Baltimore, The National Marine Bank, The Drovers and Mechanics' National Bank, The Fidelity and Trust Company, and The Fidelity and Deposit Company of Maryland, as garnishees. The defendant appeared specially in each of these cases for the purpose of moving to quash the writ of attachment, and filed the same motion in each of the garnishee cases, alleging the following reasons therefor:

1. Because there was no sufficient affidavit filed.
2. Because the account filed was insufficient.
3. Because the short note filed was not sufficient.

4. Because no writ of summons was issued against the defendant and no copy thereof was set up at the Court House door.

5. Because the alleged indebtedness for which the attachment was issued was for unliquidated damages.

6. Because the claim sued on is not a liquidated claim.

7. For other reasons apparent on the face of the proceedings.

The Court quashed the attachment on the fifth and sixth grounds, and judgment was entered for the garnishee in each case, and the plaintiff has appealed in each case.

The affidavit is in the usual and appropriate form for an attachment against a non-resident debtor, and there was annexed to and filed with the affidavit the following statement of account:

"Statement of Account.   James M. Cockins to Carroll B. Blick, Dr.   To services rendered in making investments, collecting income, adjusting settlements, releasing mortgages, and acting generally as defendant's agent and superintending his financial affairs in the United States during the years 1900 to 1909, inclusive, at $1,500 a year...... .$15,000."

The short note contained the common counts and the following special count: "This suit is instituted to recover the sum of fifteen thousand dollars due and owing from the defendant to the plaintiff, for services rendered by the plaintiff to the defendant in making investments, collecting incomes, adjusting settlements, releasing mortgages, and acting generally as defendant's agent, and superintending his financial affairs in the United States, during the years 1900, 1901, 1902, 1903, 1904, 1905, 1906, 1907, 1908 and 1909."

It is obvious that the objection that the claim is not liquidated and therefore cannot form the basis of an attachment such as that issued in this case is the principal and fundamental objection.

In *Steuart* v. *Chappell*, 98 Md. 527, we were required to consider this question, arising there under very similar cir-

cumstances, and much that was there said is precisely in point here. We shall repeat here some passages cited in that opin-- ion as the most concise and authoritative statements of the general law upon the subject. *Mr. Rood,* in his work on *Garnishment,* says: "Demands, the amount of which cannot be ascertained by computation, but only by the verdict of a jury, or in other similar manner, are not included in the terms of statutes declaring what property and debts may be attached by garnishment." And in accord with this general statement of the law special provision is made in many States, including our own State, for attachments in cases arising *ex contractu* where the damages are clearly unliquidated, and in actions for wrongs independent of contract, upon compliance with special requirements, including a bond similar to that required in attachments for fraud.

In *Poe's Practice,* sec. 415, that author said: "As the re- sult of the authorities, it may be stated that the claim, to be within the Act, must be one for an *ascertained* amount of liquidated indebtedness to which a plaintiff can *properly* swear, and the cause of action which must be filed with the declaration must be one which either on its face shows the liability of the defendant, *and the amount of such liability,* or which itself furnishes the standard or means of arriving at such liability." The rule stated by *Mr. Poe* is fully sus- tained by the Maryland cases. *Warwick* v. *Chase,* 23 Md 161; *Hough* v. *Kugler,* 36 Md. 186; *Orient Ins. Co.* v. *An- drews,* 66 Md. 371; *Williams* v. *Jones,* 38 Md. 555; *Smith- son* v. *U. S. Tel. Co.,* 29 Md. 166. In the case last men- tioned the Court said: "Where a precise sum for damages is not agreed upon, and is not of the *essence* of the contract be- tween the parties, the *quantum* of damages is unliquidated." In *Butts* v. *Collins,* 13 Wend. 130, the rule was happily ex- pressed as follows: "Unliquidated damages are such as rest in *opinion* only, and must be ascertained by a jury. They are damages which cannot be ascertained by computation or calculation; as, for instance, damages for not using a farm

in a workmanlike manner, for not skillfully amputating a limb, for unskillfully working raw material into a finished fabric, and other cases of like character where are no data given for computation or any mode of calculation."

In *Eastman* v. *Thayer,* 60 N. H. 575, where damages were claimed for non-performance of covenants in a lease, the Court said: "The ascertainment of defendant's claim requires the exercise of judgment, discretion and *opinion,* and not mere calculation or computation. *Consequently* it is for unliquidated damages."

In *Steuart* v. *Chappell, supra,* where the claim was "for $1,000 for professional services," in sustaining the action of the lower Court in quashing the attachment, we quoted the singularly clear language of the learned JUDGE DENNIS, in assigning his reasons for holding the claim to be unliquidated, and it is so conclusively applicable to the claim now before us that we reproduce it here. He said: "There is no agreement alleged by which the defendant bound himself to pay any particular sum, and the value of these services is put at what the *plaintiff himself assumes them to be worth.* This is by no means the real test of their value; the real test is what they are reasonably worth, and that must be determined by a jury, *after testimony.*"

In each case the question is whether the contract itself fixes the amount or furnishes a standard by which the amount may be certainly determined. If it does, the attachment will lie. If it does not, it will not lie.

The cases of *Williams* v. *Jones,* 38 Md. 555, and *Dirickson* v. *Showell,* 79 Md. 49, are cases where the attachment was sustained, and they are good illustrations of the application of the rule favorably to the plaintiff. In the former case, a bond conditioned for the payment of money failed to state the exact amount it was intended to secure, but it contained all the elements or data necessary to enable the Court to ascertain the amount due thereon, and to justify the plaintiff in verifying it by his oath. In the latter case the

contract was to sell and deliver a certain promissory note for $2,000 with interest from a certain date, for $1,850, and the Court said: "The contract is no less certain *as to the standard by which the damages resulting from its breach are to be ascertained than is an agreement for the sale of goods where no price has been stipulated. Wilson* v. *Wilson,* 8 Gill, 192."

The case of *Hough* v. *Kugler,* 36 Md. 186, is in close analogy with the present case, and may be taken as a satisfactory illustration of the application of the rule adversely to the plaintiff. In that case the voucher produced by the attaching creditor consisted of articles of agreement for the purchase of five separate parcels of property by the defendant with complicated covenants as to the mode of payment therefor, and an account based on these articles of agreement, and purporting to be reduced to an account stated upon the theory of the plaintiff as to the proper mode of stating the account. CHIEF JUSTICE BARTOL, in delivering the opinion of the Court quashing the attachment, laid down the general rule as we have above stated, and said: "It is apparent from an examination of the terms and conditions of the agreement, which are numerous and complicated, embracing many things to be done and performed by the parties respectively, that the damages for their breach are wholly unliquidated and cannot be stated as a fixed definite sum of money."

We do not understand the appellant's counsel as disputing the general rule deduced from the cases, but they do contend that its application does not defeat their recovery in this case, and in support of this contention they rely chiefly, if not exclusively, upon two cases—*Bartlett* v. *Wilbur,* 53 Md. 485, and *Evans* v. *Brennon,* Tex. Civil Appeals, 46 S. W. Rep. 80.

In *Bartlett* v. *Wilbur,* the garnishees appeared and pleaded *non-assumpsit* on behalf of the defendant in the attachment, and *nulla bona* on their own behalf. At the trial the garnishees offered a prayer "that the plaintiff is not entitled

to recover in this case because no sufficient account was produced before the commissioner at the time of the taking of the affidavit on which the warrant in this case was issued," and this prayer was rejected.  The account referred to was as follows:

"The Illuminated Tile Co., to James M. Wilbur,   Dr.

To the following materials, labor services, etc., furnished in connection with work done on the New York Post Office from August 11th, 1874, to Feby. 27th, 1875:

|  |  |
|---|---|
| Glass | $4,087.99 |
| Iron | 8,595.35 |
| Rubber | 3,476.10 |
| Paints | 336.43 |
| Labor | 5,861.07 |
| His *salary* superintending and designing work 12 mos. @ $300 per month | 3,600.00 |
|  | $25,956.94." |

In sustaining the ruling on that prayer the Court said: "It is contended that the above account is defective because the precise quantities of glass, rubber, iron, etc., are not itemized.  The amount due for each of the items is set forth, and the building for which they were furnished is specifically referred to, and the time during which the appellee was employed in doing and superintending the work is stated.  It was necessary of course to prove at the trial, the precise quantity of each of the articles charged in the account, but this it was not necessary to state in the account annexed to the affidavit upon which the attachment was issued.  Before proceeding to trial, the guarnishees had the right to demand a bill of particulars, and in a case like the present where the building is referred to, the garnishees were in no manner injured by the failure to state *the precise quantity of each of the materials used in its canstruction.*" This language indicates quite clearly that the objection made

to the account had reference only to the items representing *material and labor* and that no point was made, or considered by the Court in respect to the item of salary, so that the case cannot be regarded as an adjudication of that question.

Moreover, that case is clearly discriminated from the present in the fact that the claim made there is for *salary,* while the claim here is for *"services* rendered," bringing the account into close analogy with the account in *Steuart* v. *Chappell, supra.* The word "salary" in itself imports a specific contract for a specific sum for a certain period of time. In *Words and Phrases,* vol. 7, page 6287, it is said: "There are three modes of compensating persons for services, fees, salaries and wages, all different each from the other, and the difference immemorially well understood. Fees are compensation for particular acts as the fees of clerks, sheriffs, lawyers, physicians, etc. Wages are compensation for services by the day or week, as of laborers, etc. Salaries are *per annum* compensation to men in official, and some other stations. *Cowdin* v. *Huff.* 10 Ind. 83. Salary is a fixed compensation paid at stated times. *Dane* v. *Smith,* 54 Ala. 47."

We think there would be a clear distinction between the case before us, and the case of *Bartlett* v. *Wilbur, supra,* even if it should be conceded the Court had the point before it and intended to be understood as passing upon it. The *Texas case* relied on, *Evans* v. *Brennan,* 46 S. W. 80, is out of harmony with the prevailing doctrine, as indicated in the cases we have cited from other jurisdictions, and in conflict with our own decisions to which we must adhere. As the attachment was properly quashed upon the fifth and sixth grounds of objection, we do not deem it necessary to consider the other grounds of objection argued in the brief of the appellees.

*Judgments affirmed with costs to the appellees above and below.*